```
                                   UNITED STATES DISTRICT COURT
                                   SOUTHERN DISTRICT OF FLORIDA

                                   CASE NO. 08-80315-CIV-MIDDLEBROOKS
                                   MAGISTRATE JUDGE P.A. WHITE
CHARLES THOMAS MATHIS,       :

     Plaintiff,              :

v.                           :          REPORT OF
                                    MAGISTRATE JUDGE
RIC BRADSHAW, et al.,        :

     Defendants.             :
_____
```

## I.  INTRODUCTION

In this case, plaintiff Mathis has filed an amended <u>pro se</u> civil rights complaint for damages pursuant to 42 U.S.C. §1983 (DE#11), alleging that he was provided constitutionally inadequate medical care for a back injury. After prior Reports (DE#s 8, 12) and an Order of partial dismissal (DE# 17) the case remains pending against three defendants, Dr. Pierre Dorsainvil, Dr. Jose Blandon, and Dr. Beauzile [incorrectly spelled in the complaint as Brazial].

The defendant physicians filed a joint motion to dismiss (DE#20), with supporting exhibits consisting of plaintiff's medical records (DE#21-2 at pp.1-50; DE#21-3 at pp.1-50; and DE#21-4 at pp.1-31). **This Cause is before the Court upon the defendants' motion to dismiss (DE#20) and exhibits (DE#21), construed as a motion for summary judgment,** as to which plaintiff Mathis was advised of his right to respond.[1] Mathis filed an unsworn Response

---

[1]     Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the mov- ing party is entitled to judgment as a matter of law.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.  (citations omitted)

Thus, in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that

(DE#24) in opposition to the defendants' joint motion; and the defendants filed a Reply (DE#26) incorporating an Affidavit by Dr. Dorsainvil.

### Plaintiff's Allegations

Plaintiff Mathis' allegations, as summarized in the Supplemental Report (DE#12), were essentially as follow. In the initial complaint, Mathis alleged that on October 4, 2006 at the Palm Beach County Stockade ("PBCS") he slipped and fell in a puddle of water in a restroom, injuring his lower back. He was immediately taken to medical, where he remained on a stretcher for 9 hours, and was transferred to the main jail in the morning. There, Dr. Dorsainvil saw Mathis, did a general examination, told him he would be "alright" in a couple of days, and placed him in a medical cell. From October 5 to 14, 2006 Mathis experienced great pain, but was not seen by a doctor. He states that a nurse gave him pain medication on October 14, 2006, that an x-ray was performed on October 20, 2006, and that an MRI was done on November 8, 2006. He claims that despite abnormalities detected by the x-ray and MRI, he

---

party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Thus, pursuant to Celotex and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990).If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir.1987), an Order of Instruction (DE# 22) was entered, informing the *pro se* plaintiff Mathis that the defendants' motion to dismiss was in legal effect a motion for summary judgment, and also informing him of his right to respond thereto. The Order further instructed plaintiff Mathis regarding the requirements under Fed.R.Civ.P. 56 for a proper response to such a motion.

was given only pain medication and muscle relaxers. On December 7, 2006, he was again seen by Dr. Dorsainvil, who issued him a walker. Plaintiff alleges that Dorsainvil told him that if he wanted physical therapy or pain management he would have to get his own doctor and bear the cost. Mathis also claims that he has received no treatment to prevent nerve damage, and he now has "irreparable injury" to his spine and he cannot maintain his balance. Based on those allegations, the preliminary report recommended that the complaint be allowed to go forward against Dr. Dorsainvil. Prior to service of process Mathis submitted a motion to amend, seeking dismissal of Sheriff Bradshaw, and seeking to add three new defendants: Dr. Jose Blandon, Dr. Brazial [Beauzile] and Armor Correctional Health Services. In addition to the aforementioned factual allegations, Mathis alleged in the amended complaint that he was seen by Dr. Beauzile on December 7, 2006 who, together with Dr. Dorsainvil issued him a walker but refused to schedule any physical therapy or pain management. Mathis also alleged that he was seen by Drs. Blandon and Beauzile several times, seeking relief for his back pain, but they did not provide any treatment other than over-the-counter pain medication despite their knowledge of his painful condition.

Based on those allegations, it was determined that for purposes of initial screening of the amended prisoner complaint as required under 28 U.S.C. §1915A, plaintiff Mathis' pleading was sufficient under the liberal pleading standard of Haines v. Kerner, 404 U.S. 519 (1972) to go forward on a medical indifference claim solely against Drs. Dorsainvil, Blandon and Beauzile.

At this juncture in the case [i.e., summary judgment], however, the liberal pleading of standard which is employed for screening and motions to dismiss, no longer applies, and it becomes plaintiff's obligation, when presented with a defendant/movant's sufficient showing of evidence at summary judgment, to come forward with his own evidence in rebuttal, so as to establish that there exists a genuine issue as to a material fact or facts which require(s) resolution by a trier of facts at trial. As discussed in footnote 1 of this Report, supra at pp.1-2, a mere scintilla of evidence is not enough, and the non-movant must bring forth admissible evidence as to each essential element of his claim sufficient to sustain a jury verdict, and demonstrate that there is a genuine issue as to material fact requiring trial.

## II.  DISCUSSION

The essence of plaintiff Mathis's complaint, as amended, is that the defendant physicians followed a conservative course of treatment for his back pain, using over the counter pain medication such as aspirin, that they ignored X-ray and MRI results showing that he had a serious back injury, and that they failed to provide him with additional care.

In his summary judgment Response, Mathis asserts that the treatment provided was so cursory that it amounted to no treatment at all. He asserts that he was told to see the doctor within 1 week of his release from the jail infirmary, but that he was not seen by anyone until 10/18/06. He further states that an unnamed x-ray technician told him his spine was "disfigured," and that the findings of the MRI were "Rotoscoliosis at Apex L-3 and possible spina bifida of S-1 which involves curvature [sic] of the spine." Mathis asserts that an Orthopedist, Dr. Bodden, examined him on 11/1/06, diagnosed him with "acute sciatic," and told him to walk with assistance of a walker. He further asserts that the defendants incorrectly assert that the MRI result was "Normal MRI." He further asserts that from 10/4/06 to the present he requested sick call 14 times, and notified medical staff that his condition was getting worse; and as evidence of this he points to a 4/22/08 sick call request where it was noted by a nurse that he was in Acute Distress. In addition, Mathis argues that his progress notes indicate that his condition was not getting any better. As evidence of this he references a progress note dated 2/22/08, and states that he was "physically unable to perform any daily task;" and references progress notes for 1/7/08 and 5/9/08 in which medical staff make reference to plaintiff's "obvious deformity." Finally, Mathis argues that while the defendants note that he was seen by Dr. Bodden on 5/9/08, they fail to mention that Bodden recommended that he be given lumbo sacral support, and that he continue use of a walking cane.

The defendants argue that, as established by plaintiff's medical records, the diagnosis and care provided was reasonable and proper for Mathis' condition at each point that he was evaluated, and that there was no deprivation of his constitutional rights.

### The Law Concerning Medical Claims In the Jail Context

Title 42 U.S.C., Section 1983, requires an affirmative causal connection between an official's acts and an alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11 Cir. 1995); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11 Cir. 1995).

4

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eight Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Whether an inmate's medical need requires attention as a matter of constitutional right depends upon its severity. See Estelle, supra, at 104-06. Generally, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West, 320 F.3d 1235, 1243 (11 Cir. 2003) (quoting Hill v. Dekalb Req'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11 Cir. 1994)).

In this case, it appears that the plaintiff was a pretrial detainee at the time of the events alleged, and that his claim, which would have arisen under the Eighth Amendment had he been a convicted prisoner, instead arises under the Fourteenth Amendment. For all intents and purposes, however, the standard remains the same, and cases that would apply to convicted prisoners' claims also apply to those brought by a pretrial detainee.[2]

The standard may be met where there is a showing that jail officials denied or delayed an inmate from receiving necessary medical treatment for non-medical reasons, see Ancata v. Prison Health Services, Inc., 769 F.2d 700, 704 (11 Cir. 1985). In addition, officials' inordinate delay in providing necessary treatment, without medical explanation, may evidence deliberate indifference, Farrow v. West, 320 F.3d 1235, 1247 (11 Cir. 2003), and the standard may be met where there is intentional, unexplained delay in providing to access treatment for serious painful injuries, Brown v. Hughes, 894 F.2d 1533 (11 Cir. 1990), and cases cited therein.

In Estelle, the Supreme Court reasoned that "an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." Id., 429

---

[2] Claims concerning conditions to which pretrial detainees are subjected are governed by the Due Process Clause of the Fourteenth Amendment, Bell v. Wolfish, 441 U.S. 520, 535 (1979). See Hamm v. DeKalb County, 774 F.2d 1567, 1574 (11 Cir. 1985)(for analytical purposes, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment); Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11 Cir. 1996)("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.... However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.")

5

U.S. at 103. Not every claim by a prisoner, asserting that he has not received adequate medical treatment, however, is sufficient to state a violation of the Eighth Amendment. McElligot v. Foley, 182 F.3d 1248, 1254 (11 Cir. 1999).

Negligence is not enough,[3] and a mere difference of opinion between an inmate and prison medical staff concerning his diagnosis and course of treatment does not rise to the level of a constitutional deprivation.[4] Thus, it is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. Estelle, supra; Adams v. Poag, 61 F.3d 1538, (11 Cir. 1995). In fact, once an inmate has received medical care, courts are hesitant to find that a constitutional violation has occurred. Hamm v. DeKalb County, 774 F.2d 1567, (11 Cir.), cert. denied, 475 U.S. 1096 (1986).

Treatment violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5 Cir. 1980). It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11 Cir. 1991). In order to show an objectively serious deprivation of medical care, the inmate must demonstrate: 1) an objectively serious medical need that, left unattended, poses a serious risk of

---

[3] It is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. A showing of conscious or callous indifference is required. Estelle v. Gamble, supra, 429 U.S. at 104-06; Daniels v. Williams, 474 U.S. 327 (1986); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988).

[4] The Courts have long recognized that a difference of opinion between an inmate and the prison medical staff regarding medical matters, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently held that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. Estelle v. Gamble, supra, at 107 ("matter[s] of medical judgment" do not give rise to a §1983 claim). See: Ledoux v. Davies, 961 F.2d 1536 (10 Cir. 1992) (inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); Ramos v. Lamm, 639 F.2d 559, 575 (10 Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), cert. denied, 450 U.S. 1041 (1981); Smart v. Villar, 547 F.2d 112, 114 (10 Cir. 1976) (same); Burns v. Head Jailor of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D. Ill., E.D. 1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under §1983).

harm; 2) that the response made by public officials to that need was poor enough to constitute an "unnecessary and wanton infliction of pain," and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law; and 3) an attitude of deliberate indifference, which shows that the defendants were aware of the facts from which a substantial risk of serious harm could be inferred, *and that they actually did draw that inference*. Taylor v. Adams, 221 F.3d 1254, 1258 (11 Cir. 2002). The deliberate indifference requirement is discussed further, below.

### **Deliberate Indifference**

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25, 31 (1993)); Campbell v. Sikes, 169 F.3d 1353, 1362 (11 Cir. 1999); see also Whitley v. Albers, 475 U.S. 312, 327 (1986) (holding that "the Due Process Clause affords ... no greater protection").

In LaMarca v. Turner, 995 F.2d 1526, 1535 (11 Cir. 1993) the Court held that to prevail on an Eighth Amendment claim for damages in a civil rights suit, a plaintiff must prove three elements: 1) *an objective element*, a condition that inflicted unnecessary pain or suffering, Id., citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); 2) *a subjective element*, deliberate indifference on the part of the defendant(s) to that condition, Id., citing Wilson v. Seiter, 501 U.S. 594 (1991); and 3) causation, Id., citing Williams v. Bennett, 689 F.2d 1370, 1389-90 (11 Cir. 1982). Both the objective and subjective elements must be satisfied. LaMarca, supra, 995 F.2d at 1535, n. 17 (citing Hudson v. McMillian, Hudson v. McMillian, ___ U.S. ___, 112 S.Ct. 995, 999-1000 (1992)).

Although the Constitution does not require comfortable prisons, it does not permit inhumane ones. Farmer, supra, 511 U.S. at 832 (quoting Rhodes, supra, 452 U.S. at 349). Still, the Eighth Amendment does not authorize judicial reconsideration of "every governmental action affecting the interests or well-being of a prisoner," Whitley, 475 U.S. at 319; instead, "'[a]fter incarceration, only the "'unnecessary and wanton infliction of pain'"... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Id. at 319 (quoting Ingraham v. Wright, 430 U.S. 651, 670 (1977) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976) (citations omitted))). Crucial to establishing an "unnecessary and

7

wanton infliction of pain" is some proof that officials acted with specific intent. The exact nature of the specific intent required depends on the type of claim at issue. Campbell v. Sikes, supra, 169 F.3d at 1363. This specific-intent requirement for an Eighth Amendment violation applies to claims of medical indifference. Campbell v. Sikes, supra, 169 F.3d at 1363-64.

As the Eleventh Circuit in Campbell v. Sikes observed, the Supreme Court in Wilson v. Seiter, and later Farmer v. Brennan, has "refined the inquiry" regarding satisfaction of the subjective element required for an Eighth Amendment deprivation. Campbell, supra, 169 F.3d at 1363. The Supreme Court explained in Wilson v. Seiter, that the Eighth Amendment applies only to punishments, and that prison conditions are only punishment if a mental element of punitive intent is shown, Wilson, supra, 501 U.S. at 300 ("If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify"). In Farmer v. Brennan, the Court provided further explanation of the mental state that is required for deliberate indifference, Farmer, supra, 511 U.S. at 837-38 (holding that a prison official cannot be found liable under the 8th Amendment for denying an inmate humane conditions unless he knows of and disregards an excessive risk to inmate health or safety; and he must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and the defendant must also draw the inference).

As the Eleventh Circuit has noted post-Farmer, proof that the defendant should have perceived the risk, but did not, is insufficient. Campbell supra, at 1364 (citing Farmer, at 838); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11 Cir. 1996) (the official must have a subjectively "'sufficiently culpable state of mind,'" and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not...'") (quoting Farmer, supra, 511 U.S. at 834, 838). Liability may be imposed for deliberate indifference only if the plaintiff proves the defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk." Campbell, supra, at 1364 (citing Farmer, at 837).

### Analysis

Careful consideration of the entire record [including plaintiff Mathis' complaint as amended, the defendants' motion to dismiss with exhibits construed as a Rule 56 motion, Mathis'

unsworn Response in opposition, and Defendants' Reply] reveals that defendants have made a showing that they were not deliberately indifferent, and that that showing is not rebutted by the plaintiff with evidence of the sort contemplated under Rule 56. As discussed below, the defendants are therefore entitled to summary disposition, in their favor, of the complaint which has been brought against them.

It is not disputed that Mathis suffered a slip and fall accident at a satellite jail facility (the PBCS) on October 4, 2006, and that he was transferred to the Palm Beach County Main Jail ("PBCMJ"). Defendant physicians at the PBCMJ clearly cannot be held liable for any events in which they had no involvement, that occurred prior to their contact with Mathis at the main jail. It is apparent from the record, however, that the care provided at the PBCS was not deliberately indifferent.

The record reflects that Mathis' accident, and his subsequent medical needs were not ignored. Progress Notes show that on 10/4/06 after the fall, staff responded to the report that Mathis had slipped in water and hit his head and lower back. Mathis was not simply placed on a stretcher and ignored for more than 9 hours as the allegations in his complaint might suggest. Rather, he received extensive observation and evaluation throughout the night, was given pain medication, and was transferred from the Stockade to the West Infirmary for an additional 24 hours observation.[5] A nurse's

---

[5] The record shows that Mathis was put in a neck brace and placed on a back board and taken to medical on a stretcher. A physical exam revealed that he was able to wiggle his toes (01:15). His vital signs were taken, and a call was put in to Dr. Beauzile who responded at 01:20 and ordered that Mathis be given a large dose of Motrin (800 mg by mouth), that he be kept under observation, and that he be taken to the doctors clinic in the morning. The pain medication was administered at 1:30; he was kept under observation. Medical staff, looking for signs of head injury, entered "PERL" [Pupils Equal and reactive to light] as a notation on the chart. They also noted that at 04:15 the neck brace was removed, that he was able to sit up [although complaining of pain in his lower back and hip], and was assisted to the bathroom, and taken back to the stretcher. He was offered but refused breakfast, stating he was in pain. A notation at 06:00 noted that he "awakes easily," was still "having a long of pain in R[ight] leg," and was scheduled for morning clinic. (See Progress Notes, DE#21-2, p.11). At 08:25, Mathis complained of pain, and that he could not sit up. A physical examination showed that all reflexes were normal. His heart was regular, and lungs were clear. Because "patient did not cooperate," the examination could not be completed. Staff assessed that he had neck-back pain, and an order at 9:25 was entered recommending that Mathis be transported to the infirmary for 24 hours observation. Mathis was admitted to the infirmary on observation status. He related that he had fallen at 01:00 and hit his lower back. Examination showed "Ø [no] bruising, redness or swelling to ↓ [lower] back," that Mathis stated his pain was "7 on pain scale," and that he had strong pulses and that his "↓ [lower] ext[remity] sensation [was] intact." It was

notation on 10/5/06 at 03:00 indicates that Mathis was in bed in a cell, and that he "denies any c/o [complaint of] pain;" and that there were "no s/s [sign or symptoms] of injury." (DE#21-2, p.13). He was later given a wheelchair for use to give him support while walking [presumably by standing behind it, grasping the handles, and pushing the chair], and was seen doing so by staff at the nursing station at 08:40 a.m. (Id.; see also Affidavit of Pierre Dorsainvil, M.D., DE#26 at p.7). The Record includes a "Problem List" corroborating that on 10/5/06 Mathis was given a wheelchair, and further indicating that he was later given other means of support to make walking easier: a walker on 11/15/06, and a cane on 3/22/07. (DE#21-2, p.9).

The notation in Progress Notes on 10/5/06 at 8:40 a.m. indicated that Mathis was released from the Infirmary to a medical cell ("P[lan] - will D/C [discontinue] to medical cell"), with instructions for follow up with the medical clinic within a week. (DE#21-2, p.13).

Mathis' assertion that he was not given any attention whatsoever until October 18, 2006, some two weeks after the slip and fall accident, is belied by the record. The Armor Correctional Health Services record contains a "Muscular Skeletal" assessment form, indicating that Mathis "Fell @ Stockade in BR [bathroom]," that his "acute problem" [as opposed to a chronic one] was that he was experiencing back pain which had been moderate at 6 a.m., but was severe by 10 p.m., and further indicating that the acute problem had begun "1 wk" before. His vital signs were monitored, and recorded, it was noted that he had some restriction in movement due to back pain, that there was no swelling, but some tenderness, and the assessment was "alteration in comfort, location back, related to injury." (DE#21-2, p. 49). The record also shows that during the period leading up to 10/18/06 Mathis was given pain medications; and that after he filed Inmate Health Service Requests on 10/6 and 10/7 complaining of pain in his legs and back, and inability to sleep (see DE#21-3, p.3), Protocol Orders for pain medication were entered on 10/7 and 10/12 (See DE#21-2, p.33).

Progress Notes dated 10/18/06, upon evaluation of Mathis by a PA (Physician's Assistant) reflect the PA's observations that "Pt [patient is] here ambulatory w[ith] wheelchair," that he had fallen

---

ordered that monitoring and assessment would continue, and that Mathis would was to get "pain medication per MD's Order." (Progress Notes, DE#21-2, p.12).

10

on 10/4, and that he stated that he had low back pain estimated by him to be at 8 on a scale of 10, and could not ambulate without the wheelchair. (DE#21-2 at p.13). The PA further noted that Mathis denied nerve, bowel or urinary problems, but said that he had pain that radiated in both legs. (Id.). After the examination, the PA ordered an x-ray of Mathis' lumbar spine including the coccyx [tail bone], that he be given Motrin, and that there be "F/U [followup] w[ith] results." (Id.). The x-ray was taken two days later, on 10/20/06; and as noted by Dr. Dorsainvil in his Affidavit, "the results were negative and consistent with a normal lumbar spine." (Affid., DE#26 at p.7). In his Report, the Radiologist, Dr. Tome, M.D., wrote: "LUMBAR SPINE  The vertebral bodies are intact. There is no evidence of fracture or dislocation. The interspaces are adequately preserved. The pedicles are normal. Impression: Normal lumbar spine." (Radiological Consultation, DE#21-4 at p.4).

On 10/21/06 Mathis walked to the medical department with assistance of a wheelchair, complaining of bilateral numbness, and pain. He was examined, was found to have pulses and feeling in both lower limbs, and was given 400 mg of Ibuprofen for pain, and a medical referral was recorded. (Progress Note, DE#21-2, p.14).  On 10/23, for unexplained reasons, Mathis was not brought to the clinic, and an appointment was rescheduled for the next day. (Id.). On 10/24, he was seen by the PA, with renewed complaints of pain and inability to walk without support of the wheelchair. The PA examined him, noted that he was unable to stand straight legged, but that his neuromuscular strength was good, that he denied incontinence, and was ambulatory with the wheelchair. (Id., Progress Note). In addition to the pain medication, Mathis was prescribed Robaxin, which is a muscle relaxer. (See Id.; and Dorsainvil Affid., DE#26 at p.7). Mathis was again seen on 10/27, and was examined by an ARNP (Advanced Registered Nurse Practitioner). He complained of pain and numbness after a fall some 3 weeks before, and complained that he was unable to get up from his wheelchair. The ARNP's assessment was "pain to right foot," that Mathis should be referred to Orthopedics, that he use the wheelchair, receive Motrin, continue on the Robaxin, and return to the clinic PRN [as necessary]. (DE#21-2 at p.15).

As noted by Dr. Dorsainvil in his Affidavit, due to Mathis' continued complaint of back pain, he was seen by the Orthopedist, Dr. Bodden, on November 1, 2006. (See Affid., DE#26 at p.8; see also Progress Note DE#21-2 at p.16). Dr. Bodden's examination indicated that Mathis had acute right-sided sciatica. (Bodden

11

Progress Note; Dorsainvil Affid.). As explained by Dr. Dorsainvil, sciatica is a set of symptoms that includes pain, and is not a medical diagnosis as asserted by Mathis. (Affid. at p.8, ¶7). Treatment for sciatica depends upon the cause of the symptom, and Dr. Bodden noted that the spinal x-ray was negative with the disc spaces intact. (Affid. at ¶7, referencing Bodden's 11/1 Progress Note). Dr. Bodden ordered that an MRI be taken of Mathis' spine, and that he be given 400 mg of Motrin "b.i.d." [twice daily] for 10 days. (Id.).

The Lubmar Spine MRI was taken at Palms West Hospital on 11/8/06. (MRI Report, at DE#21-4 at pp.13-14). The MRI technician noted that the Indication [or reasons for performing the test] was "Lower Back Pain. Right sided acute sciatica. Fell one month prior." (See Dorsainvil Affid. at ¶8; and Page 1 of MRI Report). As noted by Dr. Dorsainvil in his Affidavit, the "Impression" of the MRI was "Normal MRI [of the] Lumbarsacral Spine," and the MRI did not identify any clinically significant abnormalities. (Affid. at ¶9; MRI Report p.2). As noted by Dr. Dorsainvil, two incidental findings of the MRI were a "mild rotoscoliosis, apex at L3," and a "possible spina bifida occulta of S1." (Dorsainvil Affid. at ¶9; MRI Report p.1). As explained by Dr. Dorsainvil, rotoscoliosis is a curvature of the spine which typically is not a cause of sciatica. He also explains that spina bifida occulta, a variant of normal vertebral anatomy [characterized by malformation of at least one vertebra, but with normal nerves and spinal cord], is an asymptomatic condition that is considered harmless, and usually is found accidentally when x-rays or MRIs are taken. (Affid. at ¶9).

On 11/10/06 Mathis went to medical to get his MRI results and saw an ARNP. (Progress Note, DE#21-2 at p.17). He was told that the MRI showed his spine was normal. He complained of back pain; was using the wheelchair, and refused to try to get up when urged to do so by the ARNP. The ARNP's notes indicate that Mathis was scheduled to see the Orthopedist during the next week, and that he stated, "You guys do not want to do anything so I do not want to hear what you have to say," and left the clinic cursing. The ARNP wrote: "Motrin will be ordered," and ""f/u [with] ortho in 1 wk." (Id.).

As Dr. Dorsainvil noted in his Affidavit, the Orthopedist, Dr. Bodden, evaluated Mathis on 11/15/06, a week after the MRI, and found his back to be non-tender and without spasm. His deep tendon reflexes were intact without sensory deficits. Bodden noted that the MRI was normal, ordered that Mathis be given Motrin for discom-

12

fort, and encouraged him to ambulate using a walker (Affid. at ¶10; see also Dr. Bodden's Progress Note dated 11/15 at DE#21-2 p.17).

As noted by Dr. Dorsainvil upon his review of Mathis' medical record, he continued to have intermittent, subjective complaints of pain, and analgesics and muscle relaxants were continuously prescribed. In addition, he was given analgesic balm, and instructed to perform strengthening exercises. (Affid. at ¶11).[6]

It is undisputed that Mathis continued to complain of and undoubtedly experienced pain/discomfort into 2008.

It is noted, however, that Mathis' reference to progress notes from 1/7/08 and 5/9/08, ostensibly showing that he has an "obvious deformity," is not borne out by the record. Both the 1/7/08 Progress Note (DE#21-2 p.21) and the 5/9/08 Progress Note (DE#21-2 at p.25) specifically include notation of "Ø obvious deformity" [No obvious deformity].

In his summary judgment Response Mathis states that a progress note dated 2/22/08 shows not only that he was not getting any better, but that he was so disabled that "he was physically unable to perform any daily task." Examination of that Progress Note relating to Mathis' 2/22/08 clinic visit does not reflect a medical finding of such a level of disability. [The notations concerning findings during the examination reveal that Mathis presented complaining of having pain for 2 years, radiating down the posterior aspect of his right leg, and that he experiences some paresthesia [tingling, or sensation of "pins and needles"] in the right leg from time to time. Apart from Mathis' complaint of pain, the examination revealed good muscle tone and strength. The finding was Sciatica, and the treatment prescribed, upon the exam, findings, and Mathis' complaint of continued pain, was a 14 day course of Naprosyn 500 mg, twice a day, with an explanation to Mathis that doing strengthening exercises would serve to help relieve pain in the back]. (See 2/22/08 Progress Note, at DE# 21-2 at p.21)

As noted by the defendants in their Reply, Mathis also stated in his summary judgment Response that on 4/22/08, when he was seen by a nurse, her finding upon examination of him was that he was "in acute distress." Review of the medical chart, however, indicates,

---

[6] Defendants in their motion, correctly observe that the medical record shows Mathis received Tylenol, Motrin, Flexeril, and Naprosyn. (DE#26, p.1).

13

as defendants correctly observe, that the nurse wrote that Mathis was <u>not</u> in acute distress. The Nurse's entry on the Sick Call Request, under the heading "Triage Decision by Nursing Staff" was as follows: "I/M [inmate] states M/D [doctor] aware of problem and wants to [follow up with] him post TX [treatment]. Ø [no] acute distress noted." The result of the examination was "Referral to HCP [health care professional]."  The record shows that 2 days later, on 4/24/08, Mathis was seen at the clinic for his complaint of pain, and asserted inability to sit or stand for a long period. Mathis stated that he had tingling in the right leg. The fact that his x-ray and MRI from 2006 were normal was discussed with him; he was prescribed 650 mg of Tylenol to be given twice a day, for 10 days, and was again referred to be seen by Ortho. (4/24/08 Progress Note, DE#21-2, at p.25).  At the May 9, 2008 Clinic Visit, Mathis was seen in the morning by the PA. The chart entry noted that Mathis was there for medication renewal [Tylenol], that he was scheduled for othro, and complained of hip pain, but denied incontinence, fever or radiating pain. The PA noted that Mathis had "Back ↓ ROM" [reduced Range of Motion in his back], with "discomfort" and "Ø [no] obvious deformity." The prescription for 650 mg of Tylenol twice a day was renewed. (<u>Id.</u>). As noted in Dr. Dorsainvil's Affidavit (at ¶12), and reflected in Progress Notes (DE#21-2 at p.26) the Orthopedist, Dr. Bodden again evaluated Mathis on May 9, 2008.  Bodden noted Mathis' complaints of low back pain, affecting his right buttock, off and on daily for more than a year, and numbness in his right foot.  Bodden found Mathis' back to be without spasm, that he had mild tenderness in the right gluteal area, and a complaint of pain when instructed to do Range of Motion flexions for Bodden's observation. Dr. Bodden noted that Mathis had partial sensory deficit in the right leg and foot, but no clinical weakness. Bodden obtained x-rays of the pelvis and L-S [lumbosacral] spine. The Radiologist's Consultation Report on the Lumbar Spine noted "There are no fractures, subluxations, or other bony abnormalities, and the disc spaces and facet joints are well maintained," with an Impression "Normal Exam." (DE#21-4 p.3). Upon his Review of the x-rays, the Orthopedist, Dr. Bodden, found that the results were within normal limits, and there were no fractures. The spine x-ray showed "alignment of lumbar spine with intact disc spaces." It was the Orthopedist's finding that Mathis presented with right sciatica, and his considered medical opinion that the proper course of treatment was that Mathis receive "Lumbo sacral support," pain medications in accordance with house MDs' orders, and that he continue to use a cane. (<u>See</u> Bodden's 5/9/08 Progress Note, DE#21-2 at p.26; Ortho Clinic Specialty Service/Consultation

Report DE#21-2 at p.32; and Dorsainvil Affidavit at ¶12).

As discussed in detail, above, the record establishes that at each stage, when Mathis complained and was evaluated, his medical needs were not ignored. From the outset he was prescribed pain medication. The record shows that, in addition, he was provided physical support [a wheelchair to told on to while walking, a walker, then a cane; and a lumbo-sacral support was ordered], and that diagnostic tests [x-ray and MRI] were performed in 2006 and 2008 in conjunction with referrals to a medical specialist.

Although it is unfortunate that plaintiff may have experienced varying levels of pain and other discomfort, reportedly on a daily basis, the record shows that he had ongoing access to medical care; his conditions [any injury caused by his initial slip and fall, and pain that he reported experiencing thereafter] were not ignored, there was extensive use of physical examinations as well as diagnostic tests to determine the cause and to evaluate what was deemed the medically appropriate course of treatment. Although it is the plaintiff's belief that he was treated conservatively -- to his disliking -- it cannot be said that the defendant physicians were deliberately indifferent. As noted <u>supra</u>, to prevail on a medical claim under the Eighth Amendment for cruel and unusual punishment, Mathis would have to establish not only that there was an excessive risk to his health or safety, but that from the facts of which the defendants were aware it could be inferred that a substantial risk of serious harm existed if he were not given some more course of treatment different than that which was implemented; and Mathis would further have to establish that the defendants drew that inference and yet failed to act. Mathis has not done so; and the required subjective element for an Eighth Amendment deprivation is not satisfied.

It is apparent that this is a case in which an inmate had ongoing pain and discomfort, but in which he had constant access to and was provided ongoing medical care, including pain management. The record does not support a finding of deliberate indifference on the defendants' part, and they are therefore entitled to summary disposition of the Mathis' claims in their favor.

### III.  CONCLUSION

It is therefore recommended that: 1) the defendants' joint motion to dismiss with exhibits (DE#20), treated as a motion for summary judgment, be GRANTED as to all claims and defendants; and 2) this case be closed.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

Dated: January 7th 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Charles Thomas Mathis, Pro Se
     No. 0222030
     Palm Beach County Jail
     P.O. Box 24716
     West Palm Beach, FL 33416

     Daniel L. Losey, Esquire
     BILLING, COCHRAN, HEATH, LYLES,
          MAURO, & RAMSEY, P.A.
     888 Southeast Third Ave., Suite 301
     Fort Lauderdale, FL 33316